THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LARSON MOTORS, INC., *et al.,*<br><br>                    Plaintiffs,<br><br>    v.<br><br>GENERAL MOTORS, LLC, *et. al.,*<br><br>                    Defendant. | CASE NO. C21-1367-JCC<br><br>ORDER |

This matter comes before the Court on the motion of Defendant General Motors LLC ("GM") to dismiss (Dkt. No. 12). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS in part and DENIES in part the motion for the reasons described below.

I.      **BACKGROUND**

Defendants Dan and Jim Johnson own Jet Chevrolet, Inc. ("the Dealership"), a GM dealership in Federal Way, Washington. (Dkt. No. 1-2 at 2–3.) In October 2020, the Dealership and Plaintiffs Larson Motors, Inc., and RJ 35700, LLC, entered into an Asset Purchase and Sale Agreement ("APA") and Real Estate Purchase and Sale Agreement ("REPSA") for the sale of the Dealership's assets and real estate. (*Id.*) Under these agreements, the Dealership was required to notify General Motors of any proposed sale, and Plaintiffs, as a prospective purchaser of the Dealership, was required to apply to GM for approval of the sale. (*Id.* at 3.) Sale without GM's

timely approval would be a breach of the agreements. (*Id.*)

Plaintiffs allege they duly and properly applied to GM for approval of the sale. (*Id.*) By letter dated March 23, 2021, GM rejected Plaintiffs' application. (*Id.*) They allege that GM initially stated it was rejecting the sale due to the "poor performance" of Larson's Cadillac store, but that GM's "reasons changed over time, and. . . . were disingenuous and pretextual." (*Id.*)

Plaintiffs further allege GM did not serve them, the Dealership, or the Washington Department of Licensing with a rejection notice in the manner prescribed by the Washington Manufacturers' and Dealers' Franchise Agreements Act[1] ("Franchise Act")[2]. (*Id.* at 4.) They argue GM interfered with their Dealership acquisition by refusing to approve the sale on changing grounds that were "in bad faith," rendering the decision "arbitrary and capricious." (*Id.*)

Plaintiffs brought the following claims for relief: (1) declaratory judgment related to violations of the Franchise Act,[3] (2) specific performance, (3) tortious interference with business expectancy, (4) breach of contract, and (5) violations of Washington's Consumer Protection Act[4] ("CPA"). (*See Id.* at 4–7.) GM moves to dismiss each claim with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 12 at 3.)

## II.  DISCUSSION

### A.  Legal Standard

A motion to dismiss pursuant to Rule 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2011), *see* Fed. R. Civ. P. 12(b)(6). To survive

---

[1] Wash. Rev. Code § 46.96.010 *et seq.*

[2] Revised Code of Washington section 46.96.200(2) provides "[i]f a manufacturer refuses to approve the sale, transfer, or exchange of a franchise, the manufacturer shall serve written notice on the applicant, the transferring, selling, or exchanging new motor vehicle dealer, and the [D]epartment [of Licensing] of its refusal to approve the transfer of the franchise *no later than sixty days after the date the manufacturer receives the written request* from the new motor vehicle dealer." (emphasis added.)

[3] This is the only claim against both GM *and* the Dealership. All other claims are solely against GM.

[4] Wash. Rev. Code. § 19.86.010 *et seq.*

ORDER
C21-1367-JCC
PAGE - 2

such a motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (internal quotation marks and citation omitted); *see Shroyer v. New Cingular Wireless Serv., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In reviewing such a motion, the Court accepts the truth of the facts alleged and draws all reasonable inferences from those facts in a plaintiff's favor. *Al-Kidd v. Ashcroft*, 580 F.3d 949, 956 (9th Cir. 2009). However, allegations must cross "the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 677. To do so, the complaint must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* As a result, a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* at 678 (quoting *Bell A. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

### B. Declaratory Relief – Washington's Franchise Act

Washington's Uniform Declaratory Judgments Act[5] ("UDJA") provides that a person whose rights, status or other legal relations are affected by a statute may have any question of construction or validity arising under the statute determined and obtain a declaration of rights, status, or other legal relations. Wash. Rev. Code § 7.24.020. In order to have standing to seek declaratory judgment under the Act, a person must present a justiciable controversy. *To–Ro Trade Shows v. Collins*, 27 P.3d 1149, 1153 (Wash. 2001). Inherent in the justiciability determination is standing under the statute. *See id.*; *Grant Cty. Fire Prot. Dist. No. 5 v. City of Moses Lake*, 83 P.3d 419, 423 (Wash. 2004) ("This statutory right is clarified by the common law doctrine of standing, which prohibits a litigant from raising another's legal right.").

Relying on *Tacoma Auto Mall, Inc. v. Nissan N. Am., Inc.*, 279 P.3d 487 (Wash. Ct. App. 2012), GM argues that Plaintiffs, as prospective purchasers of a motor vehicle dealership, do not have standing for their claims alleging Franchise Act violations. (Dkt. No. 12 at 4.)

Washington courts apply a two-part test to determine whether a party has standing under

---

[5] Wash. Rev. Code § 7.24.010 *et seq.*

the UDJA in such situations: the party must (1) seek to protect an interest that is within the zone of interests protected by the statute in question and (2) have suffered an injury in fact, economic or otherwise. *Grant Cty. Fire Prot. Dist. No. 5*, 83 P.3d at 423. When evaluating whether a party's interests are within the zone of interests, courts look to the statute's general purpose. *Tacoma*, 279 P.3d at 491. If the statute was not designed to protect that party's interests, an assertion of standing fails. *Id.*

In *Tacoma*, Plaintiff Tacoma Dodge entered into an agreement to purchase a Nissan franchisee's dealership, but Nissan refused to consent to the sale. *Id.* at 490. Plaintiff brought several claims against Nissan, including a claim for violation of the Franchise Act seeking declaratory relief. *Id.* The state appellate court held that the purpose of the Act was to protect sellers, not prospective dealership purchasers *Id.* at 493. As a result, the plaintiff's interests were not in the zone the statute protected. *Id.*

According to Plaintiffs, *Tacoma* is no longer good law. (Dkt. No. 14 at 6.) They assert that it was superseded by statute in 2018 when the Washington legislature expanded the class of persons protected by the statute. (*Id.* at 7.) The amended statute reads in relevant part:

> A new motor vehicle dealer who is injured in his or her business or property by a violation of this chapter<u>, or any corporation or association that is primarily owned by or composed of new motor vehicle dealers and that primarily represents the interests of new motor vehicle dealers and is acting for itself or by, for, or on behalf of one or more new motor vehicle dealers, has standing to file a petition to the department to have the matter handled as an adjudicative proceeding under chapter 34.05 RCW,</u> or may bring a civil action. . . . to seek declaratory relief."

Wash. Rev. Code § 46.96.260 (amendment underlined). Defendants counter the 2018 amendment 46.96.260 "neither gives Plaintiffs standing to sue as prospective purchasers nor supersedes the holdings in Tacoma." (Dkt. No. 16 at 2.) The Court agrees.

First, Plaintiffs do not allege they are a motor vehicles dealers association or corporation, nor does he primarily represent the interests of new motor vehicle dealers.[6] And, their alleged damages

---

[6] GM asks the Court to take judicial notice of two bill reports concerning the 2018 amendment in support of its argument that it does not provide standing to Plaintiff. (*See* Dkt. Nos. 14 at 7, 18 at

involve their own interests: the legal costs spent to "vindicate its rights," the inability to purchase the Dealership's assets, and the profits it expected to make from that deal. (*See* Dkt. No. 14.)

Second, as the 2018 amendment does not provide an express right to individual prospective dealership purchasers, it does not supersede the relevant holding in *Tacoma*. While Plaintiffs may contend otherwise, they provide the Court with no opinion from a court treating *Tacoma* negatively. (*See generally* Dkt. No. 14.) Nor would the Court expect that they could. Since 2018, courts have continued to rely on *Tacoma* as good law. *See, e.g.*, *Dodo Int'l Inc. v. Parker*, WL 4060402, slip op. at 7 (W.D. Wash. 2021); *Kingston v. Int'l Bus. Machines Corp.*, 454 F. Supp. 3d 1054, 1059 (W.D. Wash. 2020*); Seaside Inland Transp. v. Coastal Carriers LLC*, WL 4918747, slip op. at 3 n.2 (E.D. Wash. 2019). GM's duties under the Franchise Act did not extend to Plaintiffs in the instant transaction.

Plaintiffs' claim seeking declaratory judgment for violations of the Franchise Act fails.

**C.     Specific Performance**

The prayer for relief requests "specific performance of the sale of the Jet Chevrolet dealership to Larson in light of General Motors' failure to comply with RCW 49.96." (Dkt. No. 1-2 at 6.) This remedy is unavailable as plead because, as GM notes, "GM does not own, and thus cannot sell, the [D]ealership, including its assets or real estate." (Dkt No. 12 at 8.) And Plaintiffs do not include the Dealership in their claim for specific performance. (*See* Dkt. No. 1-2 at 5–6.) This is understandable. The state court has already ruled against Larson's contract-based claim for specific performance and in favor of the Dealership in a separate case, *Larson Motors Inc., et al. v. Jet Chevrolet, Inc., et al.*, No. 21-2-05057-0 KNT (2021). (Dkt. No 2 at 30–34, 37.) While GM was not a party to that suit, it is unable to control the sale of the Dealership, a remedy

---

1). The Court notes that the bill reports were not considered evidence of legislative intent. Each report contains a disclaimer that the analysis was prepared by nonpartisan legislative staff and does not constitute a statement of legislative intent. (Dkt. No. 18 at 4, 9.)

which is also unavailable by way of contract-based claim as to the Dealership. Therefore, the Court agrees with GM that Plaintiffs' specific performance claim must be dismissed.

### D. Tortious Interference

A plaintiff claiming tortious interference with a contractual relationship or business expectancy must prove five elements: (1) the existence of a valid contractual relationship or business expectancy; (2) that defendants had knowledge of that relationship; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; (4) that defendants interfered for an improper purpose or used improper means; and (5) resultant damage. *T-Mobile USA, Inc. v. Huawei Device USA, Inc.*, 115 F. Supp. 3d 1184, 1194 (W.D. Wash. 2015) (citing *Leingang v. Pierce County Medical Bureau*, 930 P.2d 288, 300 (1997)).

Persons who in good faith assert their own legally protected interest, which they believe may be impaired by the performance of a proposed transaction, are not guilty of tortious interference. *Birkenwald Distrib. Co. v. Heublein, Inc.*, 776 P.2d 721, 726 (1989) (internal quotation marks and citations omitted). Thus, whether Plaintiffs' claim survives dismissal depends on whether Plaintiffs adequately pleaded that GM acted in bad faith or through improper means.

In their complaint, Plaintiffs allege GM "arbitrarily and capriciously refused to approve" the dealership sale, resulting in "irreparable and ongoing damages." (Dkt. No. 1-2 at 6.) They allege GM interfered "with Larson's ability to acquire the [D]ealership, and its claimed basis for its refusal to approve the sale not only changed over time but was false and/or incomplete, and in bad faith." (*Id.* at 4.) They further allege GM's original stated reason for rejecting the sale was poor performance, which was disingenuous and pretextual. (*Id.* at 3.) But the complaint contains no factual allegations regarding how or why the claimed basis was in bad faith, or what changed with regards to GM's reasons for refusal. Absent more, the alleged bad faith is a "legal

conclusion couched as a factual allegation" that the Court is "not bound to accept as true" for the purposes of deciding GM's motion to dismiss. *Iqbal*, 556 U.S. at 678.

"[T]ortious interference arises from either the defendant's pursuit of an improper objective of harming the plaintiff or the use of wrongful means that in fact cause injury to plaintiff's contractual or business relationships." *Zango, Inc. v. PC Tools Pty Ltd.*, 494 F. Supp. 2d 1189, 1195 (W.D. Wash. 2007) (quoting *Pleas v. City of Seattle*, 774 P.2d 1158, 1163 (1989)). GM had a contractual right to review the Dealership's sale applications. (Dkt. No. 1-2 at 2–3). Nothing in the facts as alleged suggests that GM intended use that right to harm Plaintiffs or that GM behaved unreasonably, outside of conclusory statements. Without such allegations, Larson cannot state a claim for tortious interference.

### E. Breach of Contract

Plaintiffs argue Larson was a third-party beneficiary of the dealership agreements between the Johnsons and GM, and that GM breached these contracts to the determent of Larson. (Dkt. No. 1-2 at 6–7.) Similar to the claim for tortious interference, *see supra* Section II.D., this alleged breach involves GM's obligations of good faith and fair dealing in relation to approval of the sale requestion. (*Id.*) But, again, Plaintiffs have only provided the legal conclusion that GM acted in bad faith—no supporting facts—thus failing to *plead* breach. *Iqbal*, 556 U.S. at 678.

### F. CPA

Finally, Plaintiffs allege that GM's acts and omissions violated the CPA. (Dkt. No. 1-2 at 7.) There are five elements to a private Consumer Protection Act action: (1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to

plaintiff in his or her business or property; and (5) causation. *Hangman Ridge Training Stables v. Safeco Title Ins. Co.*, 719 P.2d 531 (1986).

GM argues Plaintiffs failed to establish a public interest impact.[7] (Dkt. No. 12 at 14.) *Hangman* describes three ways the public interest element may be satisfied depending on the context in which the alleged acts occur in CPA claims: (1) consumer transactions, such as where a plaintiff purchases a defective product, (2) transactions that are essentially private disputes, such as realtor-property purchaser, and (3) *per se* violations, which require a showing that a statute has been violated which contains a specific legislative declaration of public interest impact. 719 P.2d at 538.

GM argues the alleged acts constitute a private dispute not of the kind implicating public interest. (Dkt. No. 12 at 14–15.) Plaintiffs counter that the alleged acts constitute a *per se* violation because it has valid claims under the Franchise Act, which contains a specific legislative declaration of public interest impact. (Dkt. No. 14 at 13 (citing Rev. Code Wash. § 46.96.010).) While the Court agrees that a violation of the Franchise Act would be a *per se* violation under *Hangman*, the Court has already concluded, *see supra* Section II.B., that Plaintiff did not allege valid claims under the Franchise Act. Nor have Plaintiffs argued that they alleged the public interest element in the context of a private dispute. For example, Plaintiffs do not allege that GM advertised to, bargained with, or contracted directly with Plaintiffs. (*See generally* Dkt. No. 1-2); *see also Hangman*, 719 P.2d at 538 (listing such facts as relevant considerations). "Ordinarily, a breach of a private contract affecting no one but the parties to the contract is not an act or practice affecting the public interest." *Hangman*, 719 P.2d at 538 (citation omitted).

Accordingly, Plaintiffs have not pleaded a CPA claim upon which relief can be granted.

---

[7] GM also asserts that Plaintiffs cannot prove injury or causation. (Dkt. No. 14 at 14.) As the Court finds *infra* that Plaintiffs failed to establish the public interest element, it declines to analyze these alternative grounds for dismissing the CPA claim.

## III.   CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss with prejudice (Dkt. No. 12) is GRANTED in part and DENIED in part. Plaintiffs' Declaratory Relief for Franchise Act Violations, CPA, and specific performance claims are DISMISSED with prejudice and Plaintiffs' breach of contract and tortious interference claims are DISMISSED without prejudice and with leave to amend.[8] Plaintiffs may file a second amended complaint, addressing the infirmities described above, within thirty (30) days of this order.

DATED this 17th day of December 2021.

John C. Coughenour
UNITED STATES DISTRICT JUDGE

---

[8] Plaintiffs seek leave to amend. (*See* Dkt. No. 14 at 15.) Pursuant to Federal Rule of Civil Procedure 15(a)(2), the Court GRANTS this request in part because Plaintiffs may be able to allege sufficient facts to cure the deficiencies described above for their breach of contract and tortious interference claims. *See Krainski v. Nev. ex rel. Bd. of Regents of Nev. Sys. of Higher Educ.*, 616 F.3d 963, 972 (9th Cir. 2010); *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987).